UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Stiso, | ) | CASE NO.: 5:11CV2592 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| International Steel Group, et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

Pending before the Court are competing *Wilkins* briefs filed by the parties in this ERISA matter.  Upon review of the briefing, the Court finds that judgment in favor of Defendants is required herein.

The core facts of this matter are wholly undisputed.  Plaintiff Michael Stiso became employed with Defendant International Steel Group ("ISG") in May of 2003.  At that time, Stiso became a participant in ISG's long-term disability plan ("the Plan").  As Plan Sponsor and Administrator, ISG delegated claims handling to Defendant Metropolitan Life Insurance Company ("MetLife").  On March 22, 2006, Stiso was found to be completely disabled under the Plan and awarded benefits beginning on March 25, 2006.  On February 9, 2009, Stiso requested an increase in his monthly disability benefits, asserting that the Plan and the Summary Plan Description ("SPD") required that his benefits be increased by 7% annually.  MetLife denied the request for an increase.  Stiso appealed that decision administratively, and MetLife upheld its decision.

On November 29, 2011, Stiso brought this action on behalf of himself and all others similarly situated.  From the pleadings, it appears that Stiso brings a claim under the Plan itself and under an estoppel theory, contending that there is a conflict between the Plan and the SPD.  Defendants have briefed both claims, asserting that no merit exists in either.  The Court now reviews Stiso's claims.

Stiso's brief is almost exclusively devoted to his estoppel claim.  In that regard, the Supreme Court has recently noted that the terms of an SPD cannot be enforced as if they were terms of the Plan itself.  *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) ("For these reasons taken together we conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B).").  However, *Amara* did not foreclose reliance on an SPD in all ERISA actions.  Instead, the Court went forward and examined the availability of equitable relief under Section 502(a)(3).

> The relevant substantive provisions of ERISA do not set forth any particular standard for determining harm. They simply require the plan administrator to write and to distribute written notices that are "sufficiently accurate and comprehensive to reasonably apprise" plan participants and beneficiaries of "their rights and obligations under the plan." § 102(a); see also §§ 104(b), 204(h). Nor can we find a definite standard in the ERISA provision, § 502(a)(3) (which authorizes the court to enter "appropriate equitable relief" to redress ERISA "violations"). Hence any requirement of harm must come from the law of equity.
>
> Looking to the law of equity, there is no general principle that "detrimental reliance" must be proved before a remedy is decreed. To the extent any such requirement arises, it is because the specific remedy being contemplated imposes such a requirement. Thus, as CIGNA points out, when equity courts used the remedy of *estoppel*, they insisted upon a showing akin to detrimental reliance, *i.e.*, that the defendant's statement "in truth, influenced the conduct of" the plaintiff, causing "prejudic[e]." Eaton § 61, at 175; see 3 Pomeroy § 805. Accordingly, when

>a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.

*Id.* at 1881. Accordingly, Stiso's claims are permissible under ERISA.

In addition to disputes over the validity of Stiso's claims, the parties also dispute whether this claim should be reviewed *de novo* or under the arbitrary and capricious standard typically utilized when discretion is afforded under the Plan. Moreover, the parties appear to also disagree over the weight to be given to an alleged conflict that exists with MetLife because it interprets the Plan and is financially responsible for paying the benefits. The Court, however, need not resolve either of these conflicts. As a *de novo* review of the Plan and SPD reveals that they unambiguously support denial of the requested increase in benefits, Stiso's claim cannot succeed under any standard.

>The pertinent language of the SPD provides as follows:
>
>The plan uses your predisability earnings – that is, your monthly base wage from ISG on the day before your disability starts – to determine your income while you are disabled. Predisability earnings include pre-tax contributions you make to the 401(k) plan and flexible spending accounts, and premium payments you make for medical and life insurance benefits. Predisability earnings also include executive nonqualified deferred compensation arrangements sponsored by ISG.
>
>…
>
>The predisability earnings on which your LTD replacement income is based are indexed – that is, increased annually by a percentage. After you have received LTD benefits of 12 months, your predisability earnings are increased by 7%. If you continue receiving LTD benefits, your predisabi1ity earnings for purposes of the plan are increased 7% annually on the anniversary of your previous increase.

Doc. 72-2 at 44.

Stiso contends that the above provision is, at best, ambiguous and when interpreted against the drafting party mandates an annual 7% increase in benefits. Stiso also contends that the above

SPD-language is in conflict with the Plan and that Defendants are therefore estopped from relying on the terms of the Plan.   The Court finds no support for Stiso's contentions.

Stiso relies upon *Pisek v. Kindred Healthcare, Inc. Disability Ins. Plan*, 633 F.Supp.2d 659 (S.D.Ind. 2007) to support his claim that the language used in the SPD would be read by an ordinary employee to allow for a cost of living increase.   The Court acknowledges that the court in *Pisek* interpreted a similar provision.  In that matter, the SPD stated:  "The pre-disability earnings used in calculating your benefit payments will be increased by the annual consumer price index or 7% (whichever is less), starting on the 13th monthly LTD payment and on the anniversary of that payment for each year forward if you continue to be disabled."  *Id.* at 672.   *Pisek* went on to hold:

> Reading the plain language of this text, an average plan participant would understand it to mean that he was entitled to a cost-of-living increase in his benefit payments. ... Since Defendants now assert that the Plan does not provide participants receiving LTD benefits with a cost-of-living increase, the SPD is misleading. As such, Defendants are estopped from relying on the Plan to deny Plaintiff a cost-of-living increase.
>
> Defendants argue that the inflation-increase language is merely part of the definition of "indexed pre-disability earnings," used only to define "disability" and the work incentive program, not to describe the calculation of monthly benefits. However, the court finds that this language does not have such a restricted application. The plain meaning of the text is that the pre-disability earnings figure used to calculate benefit payments, and thus the benefit payments themselves, will be increased for inflation after a year. Further, reading this text only in conjunction with the meaning of disability or the work incentive program would be illogical. The language at issue presupposes that a participant is disabled-it refers to benefit payments, which a participant only receives if he is disabled, and states that the pre-disability earnings figure is increased annually "if you continue to be disabled." Reading the language under "indexed pre-disability earnings" in a restrictive way results in circular reasoning and goes against the plain meaning of the text.

*Id.*

This Court, however, finds the language at issue herein to be distinguishable from the language interpreted by *Pisek*.  The language reviewed by *Pisek* in that SPD makes no reference to the Plan, but instead the administrator argued after the fact that the language was in reference to the work incentive program.  Unlike the language in *Pisek*, the SPD in this matter **specifically** references the plan when discussing the indexing of predisability earnings.  "If you continue receiving LTD benefits, your predisability earnings **for purposes of the plan** are increased 7% annually on the anniversary of your previous increase." Doc. 72-2 at 144.  In order for this Court to reach the same conclusion as the Court in *Pisek*, it would be required to ignore entirely this language in the SPD.

The Court cannot interpret the language in the SPD to provide for an annual increase of 7% in benefits absent ignoring this language.  The language quite clearly directs the employee to the Plan for guidance on the effect of indexing the predisability earnings.  If the SPD sought to inform an employee that he would receive a 7% increase in his annual benefits, there would be no need to reference the plan, nor would there be any need to couch that cost-of-living increase in terms of predisability earnings.  As the interpretation sought by Stiso can only be achieved through the omission of language in the SPD, the Court cannot adopt it.

Instead, the *plain* language of the SPD directs an employee to the Plan for an explanation of the effect of indexing predisability earnings.  In that regard, it is difficult for the Court to conceive of how Stiso could maintain any estoppel claim in this matter.  Indeed, the Court cannot find a conflict between the SPD and the Plan when the SPD directs participants to the Plan for

further explanation. However, in any event, the Court finds no conflict exists because the SPD cannot be interpreted to provide an annual cost-of-living increase.

The SPD speaks only of an increase to predisability earnings. Stiso seeks to extend that provision by contending that these predisability earnings are the base from which monthly benefits are calculated. Stiso, therefore, asserts that any mention of an increase in predisability earnings is precisely the same as stating that monthly benefits will increase. Again, if this language were examined in a vacuum, that could be a reasonable interpretation. However, the language is not in a vacuum. The very same paragraph makes clear that the increase in predisability earnings is only for "purposes of the plan." As a result, there is simply no legal authority to award a cost of living increase under a theory that the SPD conflicts with the Plan. The court in *Combee v. Highmark Life Ins. Co.*, 2006 WL 1641918, at *5 (M.D.Fla. June 8, 2006) reached a similar conclusion.

In *Combee*, the court was asked to examine yet another indexing provision. In rejecting Combee's contention that the provision resulted in a cost-of-living increase, the court held:

> Combee makes two critical mistakes in reading the IPG. First, Combee assumes that the Index's role in "protect[ing] your income" means that the Index necessarily affects the Monthly Benefit he receives. Combee reads too much into the word "income." While it is true that the first sentence of the IPG is not perfectly clear as to precisely what income is protected by the Index, there is nonetheless no language in the IPG or the Plan suggesting that the "income" protected by the Index necessarily means Monthly Benefit in a general sense. To the contrary, the Plan uses the term "income" to reference income received prior to the disability (Pre-Disability Earnings), income received from work while disabled (Disability Earnings), or income received from sources such as Social Security or workers' compensation while disabled (other income); the term is generally not used to reference a beneficiary's Monthly Benefit. Moreover, Combee fails to consider the context of the IPG, which is wholly devoted to defining an inflation-adjusted index for Pre-Disability Earnings. The context, therefore, suggests that the income being protected is the Pre-Disability Earnings, not the Monthly Benefit. To be sure, Pre-Disability Earnings generally affect the Monthly Benefit (Monthly Benefit is defined as 60% of Pre-Disability Earnings). But it does not follow that whatever

> protection the Index provides to Pre-Disability Earnings will necessarily transfer to every beneficiary's Monthly Benefit-let alone Combee's Monthly Benefit. To discover the type of protection that the Index provides to Pre-Disability Earnings, one must, unsurprisingly, continue reading the rest of the Plan.

*Id.* The Court agrees with the reasoning set forth above. Moreover, as noted herein, further reading of the Plan is actually **compelled** by the language of the SPD herein.

Furthermore, the logic espoused in *Combee* applies equally to the language of the SPD herein. The SPD refers to monthly benefits, predisability earnings, and indexed predisability earnings. When calculating the monthly benefit, the SPD provides for a percentage of the predisability earnings. The SPD never mentions substituting indexed predisability earnings for predisability earnings in this calculation. Instead, it directs the reader to the Plan to further explain the use by the company of the indexed predisability earnings. Furthermore, the Plan then offers separate and distinct definitions for predisability earnings and indexed predisability earnings. Thus, the Court refuses to merge those two items into one in order to reach the interpretation proffered by Stiso. Accordingly, the Court adopts the reasoning of *Combee* in its entirety and concludes that the SPD does not provide for a cost-of-living increase.

Finally, Stiso has effectively abandoned any claim that the Plan itself provides for a cost-of-living increase. The entirety of his briefing is focused upon the estoppel claim. Regardless, the Court will examine the language of the Plan. In that regard, the Court notes that Defendants have both properly identified that the only use of indexed predisability earnings within the Plan are references to when a participant's monthly benefit could be *decreased* by earning income in excess of the indexed predisability earnings. Thus, the plain language of the Plan is

wholly inconsistent with any argument that a mandatory 7% cost-of-living increase must be awarded to all participants.

Based upon the above analysis, Stiso cannot succeed on his claims against any of the Defendants. Accordingly, judgment is hereby entered in favor of Defendants on each of Stiso's ERISA and ERISA-related claims.

IT IS SO ORDERED.

March 29, 2013 /s/ John R. Adams
                                                    JUDGE JOHN R. ADAMS
                                                    UNITED STATES DISTRICT JUDGE